THE MAYOR AND COUNCIL OF THE BOROUGH OF SEA-BRIGHT, DEFENDANTS IN ERROR, v. JAMES M. ALLGOR, PLAINTIFF IN ERROR.

Submitted July 10, 1903—Decided November 16, 1903.

A corporation owning land along the shore of Shrewsbury river where the tide ebbed and flowed, obtained the state's grant of the adjoining land under the water of the river as far out as the exterior line for solid filling established by the riparian commissioners, and also the state's grant of the right to build piers beyond the said exterior line as far out as the exterior line for piers established by said commissioners. Afterwards the corporation dedicated to public use a street having its designated terminus at the exterior line for solid filling; subsequently a grantee of the corporation, holding his title subject to the dedication, filled in the land under water at the terminus of the street beyond the exterior line for solid filling, and excluded the public from passage over the same. *Held*, that the land so filled in was subject to the public easement, and that an action of ejectment to secure the enjoyment of the public right of passage could be maintained by the local municipality.

On error to the Supreme Court.

For the plaintiff in error, *William J. Leonard, Frederick W. Hope* and *Edmund Wilson.*

For the defendants in error, *Charles H. Ivins* and *Frank Durand.*

The opinion of the court was delivered by

DIXON, J. Prior to February 1st, 1885, James R. Minugh was the riparian owner along the east shore of the Shrewsbury river in Seabright, at the place involved in the present controversy, and on that day the riparian commissioners of this state conveyed to him the land under the water of the river lying in front of his property and extending toward the west as far as the exterior line for solid filling established by the commissioners, with the right to fill up and reclaim the same. The conveyance included also the land under the water of the river between the exterior line for solid filling and the exterior line for piers established by the commissioners, with the right to build piers alone thereon.

The tract thus conveyed seems to extend about five hundred feet between the original high-water mark and the exterior line for solid filling and about four hundred feet in width along the river, and fifty feet between the exterior line for solid filling and the exterior line for piers.

· By mesne conveyances this property became vested in the Seabright Land and Construction Company on July 20th, 1891. On July 9th, 1892, this company filed in the Monmouth county clerk's office a map, showing the land laid out into blocks, lots and streets, with the exterior line for solid filling as its westerly boundary, and also showing the exterior line for piers, lying fifty feet beyond. One of these streets was Beach street, having a width of thirty-five feet and running from Ocean avenue, on the east, a distance of about four hundred and eighty feet westerly to the exterior line for solid filling. Subsequently, by deed executed July 23d, 1892, and duly recorded, the company "remised, released and forever

quit-claimed" this street to the Seabright Borough Commission, its successor and assigns. The commission was then the public body governing Seabright, which embraced the land mentioned, and its successor is the present plaintiff, the Mayor and Council of the Borough of Seabright.

In 1898, the Seabright Land and Construction Company conveyed to James M. Allgor, the present defendant, lot No. 45 on said map, which lies on the south side of Beach street and has the exterior line for solid filling as its westerly boundary, "together with all the title of said company to the land lying under water between the exterior line for solid filling and the exterior line for piers, immediately adjacent to the above described lot on the westerly side thereof, and to the center line of Beach street and the extension thereof."

Afterwards the defendant filled in the land under water at the foot of the street and put there a permanent structure which prevented the public from reaching the tide-waters of the river at that point, and this suit was brought in the Supreme Court to recover possession of that land for public use as a street. Judgment having been there rendered for the plaintiff, the defendant prosecutes this writ of error, insisting that, on the facts above mentioned, the judgment should have been in his favor.

By making and filing the map and delivering the deed to the public authorities, as above stated, the Seabright Land and Construction Company plainly evinced its intention to devote Beach street, as shown on the map, to public use as a street. When these acts were done, the company was the absolute owner of the land over which the delineated street lay, so far as such ownership can be vested in a private corporation. The westerly end of Beach street, as thus dedicated, was either within the tide-waters of the river, or, if the lawful filling had then been completed, was at the edge of those waters, so that, strictly, according to the dedication, the street afforded to the public the means of reaching the public waters over this public way. As was said in *Hoboken Land and Improvement Co.* v. *Hoboken, 7 Vroom* 540, 546.

the location of the street with its terminus at the water demonstrated conclusively that the purpose and scope of the dedication were to provide a means of access for the public to the navigable waters.

By the case just cited and those therein referred to, it is finally settled in this state that the public right of access thus acquired will be preserved by extending the way over any subsequent filling in of the land under water in front of the street, whether such filling result from natural causes or is the act of parties who do not hold a title paramount to that of the owner by whom the dedication was made.

The decisions in *Hoboken* v. *Pennsylvania Railroad Co.,* 124 *U. S. 656,* and *Elizabeth* v. *Central Railroad Co.,* 24 *Vroom* 491, are in no way inimical to that doctrine, for the judgments in those cases rested upon the conclusion that the dedication, so far as it affected the land under tide-water, was defeated by the subsequent grant of the state made in absolute terms, which vested in the grantee a title paramount to that out of which the dedication sprang. But in the present case the state's grant was prior to the acts of dedication, and the title under that grant was held by the corporation which thus devoted the land to public use as a street. The defendant, holding under the same corporation by a later grant, must necessarily be subject to the legal force of that dedication.

If, therefore, the title of the corporation to the land under water beyond the exterior line for solid filling had been, when the dedication took place, as complete as its title to the land east of that line, the circumstances of the present case could suggest no new point of controversy. But by the terms of the state's grant the land between the line for solid filling and the exterior line for piers was conveyed for the purpose of building piers alone thereon, and, of course, the plaintiff can maintain no claim outside of that purpose. Thus, the question arises whether the uses of a street, as now claimed, are included within the uses of a pier.

A pier is a structure extending from the solid land out into

the water to afford convenient passage for persons and property to and from vessels alongside of the pier. Its use is thus shown to be essentially the same as that of a way, and it bears to the vessels moored beside it relations similar to those which a way bears to contiguous places. A pier may also be, as a way may, either public or private, and when the state granted the right to build piers on this land, the right covered public as well as private piers. A public pier is subject to the ordinary uses of a public way, which in populous towns is a street. Whether piers constructed on this land can be used in all respects as streets are now used need not be at present considered, for in the pending case only the use by the public at large for passage to and from the water is involved, and to that extent we deem the public right clear.

Such a right can be vindicated by an action of ejectment at the suit of the local municipality. *Hoboken Land and Improvement Co.* v. *Hoboken,* 7 *Vroom* 540.

The judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VOORHEES, VROOM, GREEN, GRAY. 13.

*For reversal*—None.