733 A.2d 1232 (1999)
323 N.J. Super. 601
Sophie BUBIS and Alcides Ferreira, Plaintiffs-Appellants/Cross-Respondents, and
Jacinto Rodrigues, Plaintiff,
v.
Jack A. KASSIN and Joyce Kassin, husband and wife, and Board Of Trustees of the Village of Loch Arbour, Defendants-Respondents/Cross-Appellants, and
State of New Jersey, Department of Environmental Protection, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1999.
Decided July 30, 1999.
*1234 Leonard S. Needle, Fair Haven, for plaintiffs-appellants/cross-respondents.
David C. Apy, Newark, for defendants-respondents/cross-appellants Jack A. Kassin and Joyce Kassin (McCarter & English, attorneys; Mr. Apy, of counsel and on the brief).
Arnold B. Levin, West Long Branch, for defendant-respondent/cross-appellant Board of Trustees of the Village of Loch Arbour (Levin & Spector, attorneys; Mr. Levin, on the brief).
Before Judges SKILLMAN, P.G. LEVY and LESEMANN.
*1233 The opinion of the court was delivered by SKILLMAN, J.A.D.
In 1883, all of the seaside community now known as the Village of Loch Arbour (Loch Arbour) was owned by developers who prepared a map subdividing the tract into lots, blocks and streets. The 183 lots shown on this map are intersected by three east-west streets, Edgemont, Euclid and Elberon Avenues, which terminate at the beach. The lots are also intersected by a number of north-south streets, the most easterly of which is an unnamed street running along an area the map describes as "Bluff," which immediately adjoins an area the map describes as "Beach."
In 1885, the developers filed the map and commenced to sell lots.[1] The deeds from the developers to the predecessors in title of the Loch Arbour property owners conveyed not only the designated lot or lots but also an easement over "a Part of Beach and Bluff," which was described as follows:
[A] right of way, to be used in common with all other owners and occupants of lots, as shown on said map of Loch Arbour, for the [lot owners] and their tenants and occupants, at any and all times to pass and repass on foot, on, over and across a certain strip of land, being a part of Beach and Bluff, as shown on the aforesaid Map of Loch Arbour, and described as follows: Bounded on the North by Elberon Avenue, East by the Atlantic Ocean, South by Edgemont Avenue, and West by Lots 1, 2, 3, 4, 5, 6, 23, 24, 25, 26, 27 and 28, which said right shall be appurtenant to said Lot ... above granted, and to be conveyed therewith.
Plaintiffs Sophie Bubis and Alcides Ferreira both reside in homes constructed on inland lots on Edgemont Avenue. In 1995, defendants Jack and Joyce Kassin bought eight oceanfront lots on either side of Edgemont Avenue which are bordered to the west by Ocean Place and to the east by the unnamed street shown on the 1883 map. Plaintiff Bubis' property is located directly across the street from the Kassins' property, at the corner of Edgemont Avenue and Ocean Place. Although the previous owner of the Kassins' property operated a commercial, private beach club, the Kassins claim that they bought the property for their own personal use, including entertainment of family, friends and business associates. Shortly after buying the club, the Kassins allegedly used a bulldozer to create a twelve to fourteen foot high *1235 sand berm along the westerly boundary of the property.
The erection of the sand berm precipitated this lawsuit. Plaintiffs' complaint alleged that the Kassins, by maintaining a "barrier" along the westerly boundary of their property, had "wilfully interfered" with plaintiffs' right to pass over the Beach and Bluff. Plaintiffs also alleged that the berm and a nearby fence prevented them from using the streets shown on the 1883 map for free access to the beach and ocean. Accordingly, plaintiffs sought an injunction compelling defendants to remove the berm and fence. A second count of the complaint alleged that the Kassins' construction activities interfered with plaintiffs' right to an "unobstructed view" of the Atlantic Ocean. A third count sought to enjoin the Department of Environmental Protection (DEP) from issuing a permit which would authorize the Kassins' construction activities.
In their answer to the complaint and in a certification filed in opposition to plaintiffs' application for a preliminary injunction, the Kassins alleged that plaintiffs no longer had any right to use the Beach and Bluff because it now lies below the high water line.[2] The Kassins also alleged that plaintiffs no longer have a right to use the part of Edgemont Avenue lying east of Ocean Place because Loch Arbour vacated that portion of the street in 1978.
The trial court denied plaintiffs' application for a preliminary injunction. The court also dismissed plaintiffs' claim against the DEP.
Plaintiffs subsequently filed a motion for leave to file an amended complaint adding the Board of Trustees of Loch Arbour as defendants and asserting additional claims. A new count in the amended complaint sought a declaration that plaintiffs have a right of access by means of Edgemont Avenue to the "Beach and Bluff" shown on the 1883 map, which the Kassins are preventing plaintiffs from using, and an order requiring the removal of all physical barriers to beach access on Edgemont Avenue. In another count, plaintiffs alleged that Loch Arbour, which owns six oceanfront lots directly north of the Kassins' property, on which it operates a municipal beach club, had improperly erected a gate and fence across Euclid Avenue, which also interferes with plaintiffs' access to the Beach and Bluff area. Plaintiffs sought an order requiring removal of the gate and fence or "free and unrestricted access" through all fences, gates and other physical barriers blocking their access to the beach along Euclid Avenue. Plaintiff also sought a mandatory injunction compelling Loch Arbour's land use officials to bring an action to force the Kassins to restore the topography of the beach to its pre-1995 condition.
The Kassins opposed plaintiffs' motion for leave to file an amended complaint and also filed a cross motion for a summary judgment dismissing the complaint.
The trial court granted plaintiffs' motion to file an amended complaint. The court also granted the Kassins a partial summary judgment dismissing plaintiffs' second count, which alleged that the berm and fence on the Kassins' properties interfered with plaintiffs' right to an unobstructed view of the Atlantic Ocean.
After a pretrial conference, the trial court conducted a two day trial in which the proofs were primarily addressed to the question whether any part of the area which the 1883 map describes as Beach and Bluff is still above the mean high water line. The trial court concluded in an oral opinion, later formalized in a written opinion, that all of the Beach and Bluff is now below the mean high water line.
By a subsequent oral decision, the court concluded that because the Beach and Bluff is now entirely below the mean high water mark, plaintiffs' easements over that area have been extinguished. In addition, *1236 the court held that any private easements plaintiffs may have enjoyed over Edgemont and Euclid Avenues "ceased to exist with the submerging of the beach and bluff." The court also dismissed plaintiffs' claim seeking to compel Loch Arbour to bring an enforcement action against the Kassins to remove the sand berm on their property. Finally, the court denied defendants' application for counsel fees under the frivolous litigation statute. N.J.S.A. 2A:15-59.1. Accordingly, the court entered a final judgment dismissing plaintiffs' complaint and denying defendants' counsel fee applications.
Plaintiffs have appealed from the dismissal of their claims, and defendants have cross appealed from the denial of their counsel fee applications. Plaintiffs argue that the trial court erred in finding that the area described as Beach and Bluff on the 1883 map is now below the mean high water line. Plaintiffs also argue that even if the Beach and Bluff is now below the mean high water line, they still retain an easement to the beach and ocean over Edgemont and Euclid Avenues. In addition, plaintiffs argue that the court erred in dismissing their claim that the Kassins have interfered with their right to an unobstructed view of the Atlantic Ocean by constructing a sand berm along their property's westerly boundary and in dismissing their claim that Loch Arbour failed to enforce compliance with a municipal ordinance which allegedly prohibits such a berm. Plaintiffs also assert that the trial court failed to address some of their other claims, particularly a claim that a six foot fence around the Kassins' property violates a restrictive covenant which prohibits the erection of any fence more than four feet high within fifty feet of Edgemont Avenue or Ocean Place.
We conclude that there is substantial credible evidence to support the trial court's finding that all of the area described as Beach and Bluff on the 1883 map is now below the mean high water line. However, we conclude that the deeds to plaintiffs' predecessors in title conveyed implied private easements over Edgemont and Euclid Avenues to afford access to the beach and ocean, and that the erosion of the Beach and Bluff has not extinguished those easements. Therefore, we reverse the dismissal of plaintiffs' claims to private easements over Edgemont and Euclid Avenues and remand the case to the trial court to determine an appropriate remedy. We also remand plaintiffs' claim that portions of the Kassins' six foot fence violate the restrictive covenant which prohibits any fence more than four feet in height in certain locations in Loch Arbour. We reject plaintiffs' other arguments. Because we agree with plaintiffs' primary claim, defendants' cross appeals from the denial of their applications for counsel fees under the frivolous litigation statute are clearly without merit and do not require discussion. R. 2:11-3(e)(1)(E).

I
It is firmly established that when land is sold with reference to a map on which lots and streets are delineated, the purchaser acquires an implied private right of way over the streets. Highway Holding Co. v. Yara Eng'g Corp., 22 N.J. 119, 136, 123 A.2d 511 (1956). The sale of lots with reference to a map on which streets are delineated also constitutes "a dedication of such streets to the public." Id. at 125, 123 A.2d 511. "After such dedication of streets, ... the public has the right to appropriate them at any time it wants or convenience requires, no matter how long delayed." Id. at 126, 123 A.2d 511 (citations omitted). However, the lot owner's private right of way is not affected by a municipality's acceptance or vacation of such a dedication:
The private right in question is separate and distinct from the right of the lot owners shared with the general public by virtue of the public easement impressed on the land by the dedication, or by the dedication and its acceptance by the public authorities.
[Id. at 127, 123 A.2d 511.] *1237 Consequently, "[a] resolution vacating a street does not take away, or in the least impair, the private rights of an abutting owner; it is only a surrender or extinction of the public easement." Id. at 126, 123 A.2d 511.
The scope of the implied right of way acquired by a purchaser of a lot sold with reference to a map on which streets are shown "is one of intention ..., the intention being spelled out at the time and by the filing of the map." Id. at 127, 123 A.2d 511. The determination of that intention is guided by the principle that "a private right of way in a street is confined to such a use of the road or street as is necessary or useful for the beneficial enjoyment of the lot conveyed." Id. at 136, 123 A.2d 511.
In most circumstances, the only use of the streets shown on a map that is "necessary or useful for the beneficial enjoyment of the lot conveyed" is "a right of way or access from or to some public highway." Ibid. However, if the location of the lots or the circumstances surrounding the conveyance indicate that a more expansive right of way is necessary for the purchaser to obtain the full beneficial enjoyment of the lot, the courts will recognize whatever implied right of access is required to carry out the intent of the conveyance. See Clark v. City of Elizabeth, 40 N.J.L. 172, 175 (E. & A. 1878); see also Lake Garda Co. v. D'Arche, 135 Conn. 449, 66 A.2d 120, 122-23 (1949).
In this case, plaintiffs' predecessors in title purchased lots in a planned development immediately adjoining the Atlantic Ocean. The map with reference to which those lots were sold showed streets running directly from the lots to the beach and an unnamed street next to the Beach and Bluff. Consequently, any person acquiring one of those lots would reasonably have assumed that one of the benefits of property ownership was convenient access to the beach and ocean by means of this street network. Moreover, if there were any possible doubt that access to the ocean and beach was an essential part of the package of benefits which the developers conveyed to plaintiffs' predecessors in title, that doubt would be resolved by the fact that each purchaser acquired not only a lot but also an express easement over the Beach and adjoining Bluff. Since plaintiffs' lots are not contiguous to the Beach and Bluff, the only way plaintiffs' predecessors in title could have obtained access to the beach and ocean without passing over the lots of other property owners would have been by walking along the streets shown on the map. Therefore, the use of those parts of Edgemont and Euclid Avenues which provide access to the beach and ocean was "necessary or useful for the beneficial enjoyment of the lot[s] conveyed" to plaintiffs' predecessors in title. Highway Holding Co. v. Yara Eng'g Corp., supra, 22 N.J. at 136, 123 A.2d 511; see also Maier v. Mayor of Mountain Lakes, 33 N.J.Super. 309, 110 A.2d 140 (App.Div. 1954); Russakoff v. Scruggs, 241 Va. 135, 400 S.E.2d 529, 533 (1991).
This case is similar in some respects to Lennig v. Ocean City Ass'n, 41 N.J. Eq. 606, 7 A. 491 (E. & A. 1886), in which a developer sold lots in a seashore religious community with reference to a map which showed a large open square adjoining the ocean that was designated as "camp ground." Plaintiff bought several lots immediately adjoining this square on which he erected a summer home. However, the developer subsequently proposed to subdivide the square into additional residential building lots. In concluding that plaintiff was entitled to an injunction prohibiting this subdivision, the Court of Errors and Appeals stated:
Whenever the owner of a tract of land lays it out into blocks and lots upon a map, and on that map designates certain portions of the land to be used as streets, parks, squares, or in other modes of a general nature calculated to give additional value to the lots delineated thereon, and then conveys those lots by reference to the map, he becomes bound to the grantees not to use the *1238 portions so devoted to the common advantage otherwise than in the manner indicated.... The object of the principle is, not to create public rights, but to secure to persons purchasing lots under such circumstances those benefits, the promise of which it is reasonable to infer has induced them to buy portions of a tract laid out on the plan indicated.
....
The map or plan according to which the complainant's deeds were made, interpreted in the light of the object of the association as avowed in its articles of incorporation, indicates that ... the blocks between Wesley avenue and the sea were to be kept open....
If the present scheme of the defendant be carried out, it is certain that the complainant will lose a great portion of those advantages which the association impliedly promised him as inducements to the purchase of its lots.
[Id. at 608-10, 7 A. 491.]
Similarly, if defendants were allowed to interfere with the access to the beach and ocean along Edgemont and Euclid Avenues shown on the map with reference to which plaintiffs' predecessors in title purchased their lots, plaintiffs would "lose a great portion of those advantages" which the developers "impliedly promised ... as inducements to the purchase of [their] lots."
Moreover, we conclude that the erosion of the Beach and Bluff has not extinguished plaintiffs' private rights of access to the beach and ocean. Initially, we note that the word "beach" is commonly understood to refer to the area between the low and high water lines. See Anderson v. DeVries, 326 Mass. 127, 93 N.E.2d 251, 255 (1950) ("The primary meaning of the word beach is the land between the ordinary high water mark and the low water mark or the space over which the tide ebbs and flows."); cf. Borough of Spring Lake v. Polak, 76 N.J.Eq. 212, 213-14, 75 A. 753 (Ch.1909) (noting that on the filed map of Spring Lake, "[t]he strip marked `beach' is the shingle that extends from the `bluff' to low-water mark and is nearly if not quite covered with water at high tide."), rev'd on unrelated grounds, 77 N.J.Eq. 557, 78 A. 50 (E. & A.1910). Consequently, it is reasonable to assume that the parties to the original conveyances contemplated that a portion of the land which was subject to the express easement (the Beach) was below the mean high water line. We recognize that the boundary line between public and private land is the mean high water line and that the upland owner does not own the land below that line. Borough of Wildwood Crest v. Masciarella, 51 N.J. 352, 357, 240 A.2d 665 (1968). However, in the nineteenth century an upland owner could obtain ownership of land lying between the mean high tide and low tide lines by artificially filling the area. O'Neill v. State Highway Dep't, 50 N.J. 307, 324-25, 235 A.2d 1 (1967); Stevens v. Paterson & Newark R.R. Co., 34 N.J.L. 532, 544-49 (E. & A. 1870). It was also recognized that the upland owner could place encroachments such as bath houses below the mean high water line. See Borough of Spring Lake v. Polak, supra, 77 N.J. Eq. at 558-59, 78 A. 50. Therefore, the grant of an easement over the Beach provided assurance that the oceanfront property owners would not place encroachments upon the beach that would interfere with the other property owners' enjoyment of that area.
The conclusion that plaintiffs' private rights of access to the beach and ocean are not contingent upon some portion of the Beach and Bluff remaining above the high water line is also supported by a line of cases which hold that a right of way terminating at the mean high water line will be extended over areas that were below the line at the time of the conveyance but are subsequently reclaimed by filling or natural accretion. See, e.g., McAndrews & Forbes Co. v. City of Camden, 78 N.J.Eq. 244, 248, 78 A. 232 (E. & A.1910); Seabright v. Allgor, 69 N.J.L. 641, 643-44, 56 A. 287 (E. & A.1903); Hoboken Land & Improvement Co. v. City of Hoboken, 36 *1239 N.J.L. 540, 546-48 (E. & A. 1873). In Seabright v. Allgor, the Court stated that:
[T]he location of the street with its terminus at the water demonstrated conclusively that the purpose and scope of the dedication were to provide a means of access for the public to the navigable waters....
[I]t is finally settled in this state that the public right of access thus acquired will be preserved by extending the way over any subsequent filling in of the land under water in front of the street.
[69 N.J.L. at 644, 56 A. 287.]
Similarly, in this case, the filed map showing streets which run all the way to the beach, the deeds conveying express easements over the Beach and Bluff, and the circumstances surrounding the development of Loch Arbour, all support the conclusion that the lot owners acquired implied rights of access to the beach and ocean which remain in effect even though the Beach and Bluff is now overflowed by water at high tide.
We recognize that as long as the area designated as Beach and Bluff on the 1883 map remains below the mean high water line, plaintiffs' right to use the beach area will be governed by the public trust doctrine.[3]See Matthews v. Bay Head Improvement Ass'n, 95 N.J. 306, 471 A.2d 355, cert. denied, 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984); Borough of Neptune City v. Borough of Avon-by-the-Sea, 61 N.J. 296, 303-10, 294 A.2d 47 (1972). However, if the mean high water line were to shift eastward into this area as a result of accretion, plaintiffs' express easement over the Beach and Bluff would be revived.
Because the trial court concluded that any private rights of way plaintiffs may have enjoyed over Edgemont and Euclid Avenues had been extinguished, it did not reach the question of remedies. In fact, the court stated at the beginning of its opinion that the trial had been limited to the "factual question" of whether any part of the Beach and Bluff was "still ... above water[,] ... leaving any other issue for a later date." Therefore, the case must be remanded to the trial court to afford the parties an opportunity to present evidence or arguments relating to remedies and for the trial court to make findings of fact and conclusions of law with respect to plaintiffs' demands for relief.

II
Plaintiffs also argue that the trial court erred in failing to consider their claim that the Kassins' six foot fence along Ocean Place violates a restrictive covenant which prohibits the erection of any fence more than four feet high within fifty feet of Edgemont Avenue or Ocean Place.
Plaintiffs raised this claim only indirectly. The seventh count of their amended complaint sought a declaration of invalidity of a municipal ordinance which states that "[a]ll properties within the Beach Zone may have a fence which shall be set back six inches from all property lines and shall have a maximum height of 72" above the ground." Plaintiffs alleged, among other things, that this ordinance violates a restrictive covenant which "prohibits the construction of fences along defendants' property near the line of Edgemont Drive which is higher than four(4) feet." Similarly, plaintiffs' memorandum attached to the pretrial order contended that the ordinance is "illegal as applied to the properties in question since it contravenes" the restrictive deed covenant which prohibits the construction of any fence higher than four feet within close proximity to Edgemont Avenue or Ocean Place.
Plaintiffs' argument that there is an inconsistency between the Loch Arbour *1240 beach fence ordinance and the restrictive covenant is clearly without merit, because the ordinance merely permits construction of a fence with "a maximum height of 72" above the ground." It does not mandate the construction of a fence, and if a property owner chooses to erect one, it can be less than the maximum height of six feet.
However, viewing plaintiffs' complaint indulgently, as we are required to do, see Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 194, 536 A.2d 237 (1988), it can be read to assert a claim that the Kassins or their predecessors in title erected fences which violate the restrictive covenant that prohibits any fence more than four feet in height within fifty feet of Edgemont Avenue or Ocean Place. Therefore, since the case must be remanded to the trial court to determine the relief to which plaintiffs are entitled for interference with their private right of access to the beach and ocean, we conclude that plaintiffs also should be given an opportunity to pursue their claim that the Kassins' fences violate the restrictive covenant.

III
Plaintiffs' other arguments require only brief discussion.
Plaintiffs argue that the trial court erred in rejecting their challenge to a 1978 Loch Arbour ordinance which vacated the part of Edgemont Avenue that intersects the Kassins' property. However, because we have concluded that plaintiffs still have private rights of access over this street, and there is no indication those private rights provide a more limited right of access to the beach and ocean than plaintiffs and their predecessors may have enjoyed prior to vacation of this part of the street,[4] this point appears moot. In any event, the trial court correctly rejected plaintiffs' challenge to the ordinance because it was brought beyond the one-year period allowed by N.J.S.A. 2A:14-11.
Plaintiffs argue that the trial court erred in dismissing their claim that the Kassins created a "nuisance" by erecting a sand berm across the rear of their property which obstructs plaintiffs' view of the ocean. Plaintiffs do not claim that there is any restrictive covenant in the deeds to the Loch Arbour property owners which prohibits oceanfront property owners from erecting a structure or contouring their property in a way which obstructs the ocean view of inland property owners. Moreover, the only New Jersey case on point holds that in the absence of a restrictive covenant, a property owner has no right to an unobstructed view across a neighbor's property. Harwood v. Tompkins, 24 N.J.L. 425, 427 (Sup.Ct.1854).
Plaintiffs' reliance upon DEP regulations adopted under the Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -32, to support their claim that the Kassins have interfered with their right to an unobstructed view of the ocean, is misplaced. These regulations simply state that "[c]oastal development adjacent to all coastal waters ... shall provide ... access to the waterfront to the maximum extent practicable, including both visual and physical access." N.J.A.C. 7:7E-8.11(b). The regulations do not impose an absolute prohibition against oceanfront development which interferes with the view of inland property owners. In any event, the DEP has responsibility for enforcement of these regulations. In fact, the Kassins have applied to the DEP for a "sand dune restoration" permit, and it may be assumed that if the DEP finds that the Kassins' sand berm is inconsistent with CAFRA or the regulations adopted thereunder, it will deny the application for the permit and require the berm to be removed. However, the trial court correctly concluded that plaintiffs do not have a right to an unobstructed view of the ocean independent of these regulatory provisions.
*1241 Plaintiffs also argue that the court erred in refusing to compel Loch Arbor to bring an enforcement action against the Kassins for removal of the berm. In support of this argument, plaintiffs rely upon a preamble to the zoning ordinance which states that the purpose of the "Beach" zone is "to preserve the natural beach area and dunes which are present in the Village for their unique beauty and recreational assets." However, plaintiffs do not claim that the Kassins have violated any substantive provision of this ordinance. A court will enter an order compelling a municipality to enforce an ordinance only if "the plaintiff's right and the defendant's duty are clear and other adequate relief is unavailable." Garrou v. Teaneck Tryon Co., 11 N.J. 294, 303, 94 A.2d 332 (1953). Here, plaintiffs' claim that the Kassins have violated the zoning ordinance is tenuous. Moreover, even if there were a violation, plaintiffs could have pursued this claim directly against the Kassins. See N.J.S.A. 40:55D-18. Therefore, there is no basis for an order compelling Loch Arbour to bring an enforcement action against the Kassins.
Finally, plaintiffs argue that the trial court erred in failing to make any findings with respect to their claim that the Kassins violated a deed covenant requiring the owner of their property to furnish at least fifty bath houses for public rental. However, plaintiffs failed to assert this claim in their amended complaint, and it is not set forth in the pretrial order. Therefore, the argument is not properly before us. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
Accordingly, we reverse the part of the final judgment which dismissed plaintiffs' claims to private easements along Edgemont and Euclid Avenues. We also reverse the judgment insofar as it rejected plaintiffs' claim that the Kassins violated the restrictive covenant prohibiting the construction of fences more than four feet in height. We affirm the judgment in all other respects. The case is remanded to the Chancery Division for further proceedings in conformity with this opinion.
NOTES
[1] A detailed description of the various restrictions in the Loch Arbour deeds and the history of early development of the community may be found in LaFetra v. Beveridge, 124 N.J.Eq. 24, 199 A. 70 (E. & A.1938).
[2] The Kassins' answer also asserted counterclaims for libel and invasion of privacy. The final judgment dismissed these counterclaims on the ground they had been "abandoned or waived." The Kassins do not challenge the dismissal of their counterclaims.
[3] This includes at least the right to use the area below the mean high water line. Because the issue was not presented to the trial court and has not been briefed on appeal, we do not consider the question whether plaintiffs have a right to use any privately owned land above the mean high water line. See Matthews, supra, 95 N.J. at 322-26, 471 A.2d 355.
[4] We note that it is unclear from the record whether the municipality ever accepted the dedication of this part of the street.