COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Bumgardner and Frank
Argued at Richmond, Virginia


THOMAS C. EVELYN

v.        Record No. 2945-04-2

OPINION BY
JUDGE LARRY G. ELDER
OCTOBER 25, 2005

COMMONWEALTH OF VIRGINIA
 MARINE RESOURCES COMMISSION


FROM THE CIRCUIT COURT OF NEW KENT COUNTY
W. Park Lemmond, Jr., Judge Designate

Bruce E. Arkema (Cantor Arkema, P.C., on briefs), for appellant.

Carl Josephson, Senior Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


Thomas C. Evelyn (appellant) appeals a circuit court decision holding that the Virginia

Marine Resources Commission (VMRC) had the authority to order the removal of a portion of

his private pier, located along the Pamunkey River.  We hold the governing statutes limit the

riparian owner's rights such that he may build, without a permit, only those structures

"necessary" or essential to the placement of a private pier for the limited purpose of accessing

navigable waters or vessels moored in those waters.  The riparian landowner may not build,

without a permit, incidental appendages designed merely to enhance the primary purpose of the

pier.  Thus, we affirm the circuit court's decision affirming the VMRC's order to appellant to

remove the roof and second-story deck structure he added to his pier without VMRC approval.[1]

---

[1] Because appellant has challenged only the conclusion that Code §§ 28.2-1203 and
62.1-164 did not authorize him to build the roof and deck structure without a permit, we do not
consider whether the VMRC acted arbitrarily and capriciously in rejecting appellant's request for
approval of the structure after-the-fact.

I.

BACKGROUND

On March 24, 2000, appellant submitted an application to the VMRC for permission to construct a pier and boat ramp on his property along the Pamunkey River. The application sought permission to construct on appellant's property "a six (6) foot wide[, 80-foot long] private pier extending 45 feet beyond the mean high water shoreline with an 18-foot long T-end and a 15-foot wide boat ramp extending 15 feet channelward of the mean low water line." The VMRC responded as follows:

> The proposed boat ramp will require a permit from our agency. However, based upon your application and drawings, which assert that you are a riparian property owner, please be advised that no authorization is required from the [VMRC] or your local wetlands board for your pier with T-end, *provided* it will be used exclusively for your private, noncommercial use, is located within your riparian area, and will not extend beyond the established navigation line.

On August 7, 2000, the VMRC issued a permit for construction of the boat ramp that granted appellant "permission to . . . [e]ncroach in, on, or over State-owned subaqueous bottoms pursuant to Chapter 12, Subtitle III, of Title 28.2 of the Code of Virginia."

On May 8, 2002, VMRC staff conducted a "routine compliance check" of the boat ramp. The ramp constructed was longer than authorized by the permit, but "the additional length over the original request was landward of mean low water[,] and the subaqueous encroachment was consistent with the permit." Appellant applied for and received an after-the-fact approval for the boat ramp extension.

Also at the May 8, 2002 compliance check, VMRC staff determined that the pier constructed was longer than proposed, that the T-head was larger than proposed, and that a "roof/deck with stair access," not mentioned in the request for authorization, "had been constructed over a portion of the pier T-head." At a follow-up visit on May 16, 2002, appellant's

agent indicated that the changes in the design of the pier were made after receipt of the VMRC's letter of April 18, 2000, indicating that no authorization was required for the pier. The agent indicated his belief, based on the VMRC's letter, that no additional authorization was required for the changes to the pier to include the roof/deck structure.

On May 21, 2002, the VMRC issued a notice of violation based on the unauthorized roof structure and ordered that the structure be removed. However, it also acknowledged appellant's desire to submit "an after-the-fact request to modify [the] existing permit to retain the existing roof structure" and agreed to hold "further enforcement in abeyance" pending the VMRC's ruling on the request. Appellant submitted that request, which included "adjoining property forms" indicating no opposition to the structure and a letter from the applicant's sister indicating that several family members were elderly and handicapped and required the shade provided by the structure's second story in order to enjoy family gatherings on the pier.

On September 24, 2002, the VMRC held a hearing on appellant's request. The "[r]ecommendation from [VMRC] staff" was to deny the after-the-fact request, based in part on the following rationale:

> The applicant and/or agent were well aware that permits for encroachment over State-owned subaqueous lands are required since a permit was issued for the boat ramp. Additionally, the structures, as built, do not conform to the original drawings and contain larger and additional structures than . . . originally requested. In this case, the covered roof/deck structure represents an unauthorized encroachment over State-owned submerged lands and is not necessary for use of the pier or access to the river.

The VMRC voted seven to one to deny the request for after-the-fact authorization for the roof/deck structure and to require its removal within 60 days.

Appellant noted his appeal to the New Kent County Circuit Court. Appellant's primary argument was that the roof/deck structure was allowed as part of the pier that Code § 28.2-1203(A)(5) authorized him to construct without a permit. Appellant argued in the

alternative that the VMRC acted arbitrarily and capriciously in rejecting his after-the-fact request for a permit. The court affirmed the VMRC's ruling. On appeal to this Court, appellant contends only that the pier and roof/deck structure are exempt from the VMRC's control based on the language of existing statutes and the absence of any applicable regulations. He does not contend that, if the VMRC had such permitting authority, it acted arbitrarily and capriciously in rejecting his application for approval after-the-fact.

II.

ANALYSIS

On appeal of an agency's determination on issues of law, "'[i]f the issue falls outside the area generally entrusted to the agency, and is one in which the courts have special competence, i.e., the common law or constitutional law,'" the court need not defer to the agency's interpretation. Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 243-44, 369 S.E.2d 1, 8 (1988) (quoting Hi-Craft Clothing Co. v. NLRB, 660 F.2d 910, 914-15 (3d Cir. 1981)).

> However, where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts[, and] . . . "'judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion.'"

Id. at 244, 369 S.E.2d at 8 (quoting Va. Alcoholic Beverage Control Comm'n v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979) (quoting Schmidt v. Bd. of Adjustment, 88 A.2d 607, 615-16 (N.J. 1952))). Although the outcome of this appeal turns to some extent on an interpretation of the common law, that law has been codified by the General Assembly in statutes it has entrusted the VMRC to apply. Thus, we give the agency's interpretation "special weight." Id.

- 4 -

State law specifies that, unless otherwise provided "by special grant or compact according to law," "the limits or bounds of the tracts of land lying on the bays, rivers, creeks and shores within the jurisdiction of the Commonwealth, and the rights and privileges of the owners of such lands, shall extend to the mean low-water mark but no farther." Code §§ 28.2-1200, -1202. "'[T]itle to the land between low water mark and the line of navigability is in the Commonwealth . . . .'" Avery v. Beale, 195 Va. 690, 702, 80 S.E.2d 584, 591 (1954) (quoting Grinels v. Daniel, 110 Va. 874, 877, 67 S.E. 534, 535-36 (1910)); see Code § 28.2-1200. This "property of the Commonwealth . . . may be used as a common by all the people of the Commonwealth for the purpose of fishing, fowling, hunting, and taking and catching oysters and other shellfish." Code § 28.2-1200; see Taylor v. Commonwealth, 102 Va. 759, 765-70, 47 S.E. 875, 877-79 (1904) (recognizing that predecessor to this code section was merely declaratory of common law and did not represent "an arbitrary assumption of right upon the part of the State").

At common law,

> A riparian owner has the right to [use of] the water frontage belonging by nature to his land. This right includes, *inter alia*, the right of access from the front of his property [past the low water mark] to the navigable part of the waterway, and also the right to the soil under the water between his land and the navigable line of the watercourse. Upon this soil, the owner may erect wharves, piers, or bulkheads for his own use, or the use of the public . . . .

Langley v. Meredith, 237 Va. 55, 62, 376 S.E.2d 519, 523 (1989). This common law principle "was generally interpreted as having as its main purpose 'to induce the erection of wharves for the benefit of commerce'" "without depleting the public treasury." Jose L. Fernandez, Untwisting the Common Law: Public Trust and the Massachusetts Colonial Ordinance, 62 Alb. L. Rev. 623, 624, 633 (1998) (quoting Commonwealth v. City of Roxbury, 75 Mass. (9 Gray) 451, 515 n.13 (1857)); see also Joseph K. Angell, A Treatise on the Right of Property in Tide Waters and in the Soil and Shores Thereof 234 (2d ed. 1847). "Thus, for a particular public

purpose, private rights over a public resource were extended at the expense of public rights," "subject to a limitation not to 'materially impair[]' [the public's right to] navigation" or "to fish and hunt." Fernandez, supra, at 632-33 (quoting Kean v. Stetson, 22 Mass. 492, 495 (1827)); see also Ill. Cent. R.R. v. Illinois, 146 U.S. 387, 452-53, 13 S. Ct. 110, 118, 36 L. Ed. 1018, 1042-43 (1892).

A variant of this common law right, now limited to noncommercial purposes, is codified in Code § 62.1-164, which provides as follows:

> Any person owning land upon a watercourse may erect a private wharf on the same, or private pier or landing, in such watercourse opposite his land; provided, such wharf, pier or landing is for noncommercial purposes and navigation be not obstructed, nor the private rights of any person be otherwise injured thereby. The circuit court of the county in which such wharf, pier or landing is, after causing ten days' notice to be given to the owner thereof, of its intention to consider the subject, if it be satisfied that such wharf, pier or landing obstructs the navigation of the watercourse, or so encroaches on any private landing as to prevent the free use thereof, may abate the same.

This right is "subject to such rules and regulations as the General Assembly may impose for the public's protection." Langley, 237 Va. at 62, 376 S.E.2d at 523, cited with approval in Carr v. Kidd, 261 Va. 81, 91, 540 S.E.2d 884, 890 (2001); Zappulla v. Crown, 239 Va. 566, 569, 391 S.E.2d 65, 67 (1990) ("Upon that soil, the owner may erect docks and other facilities, *subject to the rights of the public preserved by the General Assembly*, provided no injury be done to the private rights of others." (emphasis added)). Although the riparian owner has a right of use in the land and water below the low water mark, which the Supreme Court has recognized is a "valuable" "property" right, actual "'title to the land between low water mark and the line of navigability'" remains in the Commonwealth, Avery, 195 Va. at 702, 80 S.E.2d at 591 (quoting Grinels, 110 Va. at 877, 67 S.E. at 535-36), subject to "use[] [in] common by all the people of the Commonwealth," Code § 28.2-1200. See generally Angell, supra, at 196-99 ("[I]nasmuch,

as in England, the right of property in tide waters, and in the soil thereof, is by the common law, in the king, and, in this country, in the state, the king or the state may abate every intrusion thereon, whether the same be a nuisance to navigation or not.").

The General Assembly has given the VMRC jurisdiction over "all commercial fishing and all marine fish, marine shellfish, marine organisms, and habitat" "throughout" the "state-owned bottomlands in the Commonwealth." Code § 28.2-101. In order to safeguard the Commonwealth's resources, the General Assembly has enacted statutes expressly authorizing the VMRC to oversee the attempts of individual landowners to exercise their riparian rights. For example, the relevant version[2] of Code § 28.2-1203(A) provided as follows:

> A. It shall be unlawful for any person to build, dump, trespass or encroach upon or over . . . the beds of the bays, ocean, rivers, streams, or creeks which are the property of the Commonwealth, unless such act is performed pursuant to a permit issued by the Commission or is necessary for the following:
>
>     *     *     *     *     *     *     *
>
> 5. Placement of private piers for noncommercial purposes by owners of the riparian lands in the waters opposite those lands, provided that the piers do not extend beyond the navigation line or private pier lines established by the Commission or the United States Army Corps of Engineers. Subject to any applicable local ordinances, such piers may include an attached boat lift and an open-sided roof designed to shelter a single boat slip or boat lift. In cases when such roofs will exceed 700 square feet in coverage, and in cases in which an adjoining property owner objects to a proposed roof structure, permits shall be required as provided in § 28.2-1204.
>
> B. A violation of this section is a Class 1 misdemeanor.

---

[2] Unless otherwise noted, this opinion references the versions of the various statutes in effect in 2000 when appellant notified the VMRC of his desire to build a pier and boat ramp and the VMRC issued a permit for the ramp because these same statutes govern whether appellant was required to obtain a permit for the pier he constructed.

1998 Va. Acts, ch. 605; see 2000 Va. Acts, ch. 167 (amending subsection 5 to add at beginning, "Except as provided in subsection D of § 28.2-1205," which requires a permit for certain private piers "that traverse[] commercially productive leased oyster or clam grounds," a provision not claimed to apply in appellant's case).

Pursuant to Code § 28.2-1204(1), the VMRC is authorized to

> [i]ssue permits for all reasonable uses of state-owned bottomlands not authorized under subsection A of § 28.2-1203, including but not limited to, dredging, the taking and use of material, and the placement of wharves, bulkheads, and fill by owners of riparian land in the waters opposite their lands, provided such wharves, bulkheads, and fill do not extend beyond any lawfully established bulkhead lines.

See 1992 Va. Acts, ch. 836 (enacting Code § 28.2-1204, which has not been amended since that time).

Code § 28.2-1205, as it existed when the VMRC issued the boat ramp permit, set out the criteria the VMRC shall consider in determining whether to issue such permits:

> A. When determining whether to grant or deny any permit for the use of state-owned bottomlands, the Commission shall be guided in its deliberations by the provisions of Article XI, Section I of the Constitution of Virginia. In addition to other factors, the Commission shall also consider the public and private benefits of the proposed project and shall exercise its authority under this section consistent with the public trust doctrine as defined by the common law of the Commonwealth adopted pursuant to § 1-10 in order to protect and safeguard the public right to the use and enjoyment of the subaqueous lands of the Commonwealth held in trust by it for the benefit of the people as conferred by the public trust doctrine and the Constitution of Virginia. The Commission shall also consider the project's effect on the following:
>
> 1. Other reasonable and permissible uses of state waters and state-owned bottomlands;
>
> 2. Marine and fisheries resources of the Commonwealth;
>
> 3. Tidal wetlands, except when this has or will be determined under the provisions of Chapter 13 of this title;

4. Adjacent or nearby properties;

5. Water quality; and

6. Submerged aquatic vegetation (SAV).

\* \* \* \* \* \* \*

F. Any person aggrieved by a decision of the Commission under this section is entitled to judicial review in accordance with the provisions of the Administrative Process Act (§ 2.2-4000 et seq.). However, any decision made by the Commission hereunder consistent with the public trust doctrine as defined by the common law of the Commonwealth adopted pursuant to § 1-10 shall not be deemed to have been made pursuant to the police power. Nothing in this subsection shall be construed to deprive a riparian landowner of such rights as he may have under common law.

2000 Va. Acts, ch. 167 (amending code section by adding subsection D and redesignating former subsections D and E as subsections E and F).

It is undisputed that appellant did not obtain a permit for construction of the roof and deck structure on his pier. He contends that no applicable statute or properly promulgated regulation required him to obtain a permit for that structure and that the circuit court's decision affirming the VMRC's order requiring him to remove the roof and deck structure should be reversed. We disagree and affirm.

"In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature." Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997). "That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction or parol evidence, unless a literal application would produce a meaningless or absurd result." Id. (citations omitted). "[W]ords and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest." Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994).

Although Code § 62.1-164 gives a riparian landowner authority to erect a "private wharf," "pier or landing," it does not define the terms "wharf," "pier" or "landing."  Further, Code § 28.2-1203 makes it unlawful, absent issuance of a permit, for any person to build over the Commonwealth's subaqueous riverbeds "unless such act . . . is *necessary* for[, *inter alia*,] the . . . [p]lacement of private piers for noncommercial purposes by owners of the riparian lands in the waters opposite those lands . . . ."  Code § 28.2-1203(A) (emphasis added); see also Linda Lee Butler & Margit Livingston, Virginia Tidal and Coastal Law § 16.3, at 565 (1988) (stating that the predecessor to Code § 28.2-1203(A) "may be viewed as a statutory modification of the common law right" "to wharf" in context of discussing severability from land of right to wharf without specific discussion of statute's "necessary" language).  Although this statute does not define the word "pier," it makes clear that any construction over the subaqueous beds must be "necessary" for placement of a "pier."

Every statute, whether "'penal or beneficial, restrictive or enlarging of the common law,'" Bd. of Supers. v. King Land Corp., 238 Va. 97, 102, 380 S.E.2d 895, 897 (1989) (quoting Heydon's Case, 3 Co. Rep. 7a, 7b, 76 Eng. Rep. 637, 638 (1584)), is to be read so as to "'promote the ability of the enactment to remedy the mischief at which it is directed,'" Natrella v. Bd. of Zoning Appeals, 231 Va. 451, 461, 345 S.E.2d 295, 301 (1986) (quoting Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984)).  Although penal statutes are to be strictly construed against the Commonwealth, see, e.g., Cox v. Commonwealth, 220 Va. 22, 25, 255 S.E.2d 462, 464 (1979), a statute is not penal simply because its violation is a Class 1 misdemeanor, see Kitze v. Commonwealth, 23 Va. App. 213, 216, 475 S.E.2d 830, 832 (1996); see also Trop v. Dulles, 356 U.S. 86, 96, 78 S. Ct. 590, 595-96, 2 L. Ed. 2d 630 (1958) (plurality opinion).

Here, the evident purpose of the legislation is protecting the rights of "*all* the people of the Commonwealth" to use the bottomlands for, *inter alia*, "fishing, fowling, hunting, and taking and catching oysters and other shellfish," while simultaneously permitting individual riparian owners to build private piers in order to access navigable waters. Code §§ 28.2-1200 (emphasis added), -1203, -1205, 62.1-164. Thus, the statute has a primarily regulatory, non-penal purpose and should be construed liberally in favor of the public interest rather than against it.[3] See King Land Corp., 238 Va. at 102-03, 380 S.E.2d at 897.

It is in this context that we examine the meaning of Code § 28.2-1203(A). The Virginia Supreme Court has held that the "ordinary and accepted meaning" of "necessary" is "'whatever is essential for some purpose . . . of, relating to, or having the character of something that is logically required or logically inevitable or that cannot be denied without involving

---

[3] Consideration of a form of the public trust doctrine is entirely appropriate in determining legislative intent. The Virginia Supreme Court held in Commonwealth v. City of Newport News, 158 Va. 521, 549, 164 S.E. 689, 697 (1932), that "except as is otherwise expressly or impliedly provided by the Constitution, what is for the benefit of the people is committed to [the legislature's] discretion free from the control or dictation of the executive or judicial department of the government."

Since the Virginia Supreme Court issued that decision in 1932, Virginia's Constitution has been amended to require, *inter alia*, protection of the Commonwealth's "waters from pollution, impairment, or destruction, for the benefit, enjoyment, and general welfare of the people of the Commonwealth." Va. Const. art. XI, § 1. "In furtherance of such policy, the General Assembly may undertake . . . the protection of its . . . waters from pollution, impairment, or destruction, by agencies of the Commonwealth . . . ." Id. § 2.

Thus, the Constitution makes clear it is entirely appropriate for the VMRC and judiciary to consider the legislature's express duty to "safeguard the public right to the use and enjoyment of the subaqueous lands of the Commonwealth held in trust by it for the benefit of the public as conferred by the public trust doctrine and the Constitution of Virginia," Code § 28.2-1205(A), when interpreting and applying *all* legislative enactments, including Code §§ 28.3-1203 and 62.1-164. See Sharon M. Kelly, Note: The Public Trust and the Constitution: Routes to Judicial Overview of Resource Management Decisions in Virginia, 75 Va. L. Rev. 895, 900-16 (1989) (discussing evolution of public trust doctrine in Virginia and extent to which judiciary may evaluate legislative enactments for consistency with doctrine). We need not decide whether the General Assembly has the power to allow riparian owners to build recreational structures atop the portions of their piers in public waters without violating the public trust doctrine as it exists in Virginia because we hold Code § 28.2-1203(A) does not grant riparian owners such authority. Such building, if allowed, requires a permit issued pursuant to Code § 28.2-1205.

contradiction.'" Scottsdale Ins. Co. v. Glick, 240 Va. 283, 287, 397 S.E.2d 105, 108 (1990) (quoting Webster's Third New International Dictionary 1510 (1986)) (analyzing meaning of insurance contract).

The Virginia Supreme Court has recognized that a "pier" is one type of "artificial mooring out to or along navigable waters," but it has not further defined the term. Irby v. Roberts, 256 Va. 324, 330 n.4, 504 S.E.2d 841, 844 n.4 (1998) (in context of interpreting deed purporting to grant easement to construct pier, holding that "'pier' and 'wharf' are not congruent terms" but that "the construction of an artificial mooring out to or along navigable waters requires the same riparian right regardless of the intended use of the structure"). Black's Law Dictionary defines a "pier" as a "structure extending from solid land out into the water of a river, lake, harbor, etc. to afford convenient passage for persons and property to and from vessels along the sides of the pier." Black's Law Dictionary 1305 (4th ed. 1968); see Mayor of Seabright v. Allgor, 56 A. 287, 288 (N.J. 1903).

Thus, under the plain meaning of Code § 28.2-1203(A)(5), appellant was entitled, without obtaining a permit from the VMRC, to build "an artificial mooring out to navigable waters" to the extent that mooring was "essential" for the "convenient passage [of] persons and property to and from vessels along the sides" of the structure. The roof, stairs, and second floor structure appellant added to his pier were not "essential" to his ability to reach the navigable portion of the river. As appellant admitted on brief, these structures were "incidental appendages" designed to "enhance[] the primary purpose of the pier."

Code § 28.2-1203(A)(5) did not authorize appellant's construction, *without a permit*, of the portion of the mooring that was not "essential" to accessing navigable waters. Although appellant's pier involved only a second-story deck with an open design, appellant's reasoning, carried to the extreme, would allow the construction of a multi-story, enclosed dwelling not

- 12 -

subject to VMRC oversight. Allowing unfettered noncommercial building atop piers that do not intrude into navigable waters is contrary to the plain meaning of the statute and the common law and would produce an absurd result. Although appellant concedes "the architecture of a private pier can be the subject of regulation" *by a local government*, this position ignores the fact that *the VMRC* is the body to which the General Assembly has assigned the task of protecting the public's interests in "state-owned bottomlands."

Further, even if we were to hold the statute is ambiguous, requiring resort to the rules of statutory construction, these rules further support the determination we have already made regarding the plain meaning of the term "pier." "Statutes addressing the same subject are to be read *in pari materia*[, that is, they should be] 'read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments.'" Alger v. Commonwealth, 19 Va. App. 252, 256, 450 S.E.2d 765, 767 (1994) (quoting Black's Law Dictionary 791 (6th ed. 1990)). Under "[t]he maxim of statutory construction *expressio unius est exclusio alterius* . . . [,] where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute." Commonwealth ex rel. Dep't of Corr. v. Brown, 259 Va. 697, 704-05, 529 S.E.2d 96, 100 (2000) (holding only circuit courts had authority to issue prisoner transportation orders in civil cases where statute granted such authority to circuit courts without mention of district courts). "When a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way." Grigg v. Commonwealth, 224 Va. 356, 364, 297 S.E.2d 799, 803 (1982). Finally, "[i]t is well settled that where the construction of a statute has been uniform for many years in administrative practice, and has been acquiesced in by the General Assembly, such construction is entitled to great weight with the courts," Dan River Mills, Inc. v. Unemployment Comp. Comm'n, 195 Va. 997, 1002, 81 S.E.2d 620, 623 (1954),

- 13 -

and "in doubtful cases will be regarded as decisive," <u>S. Spring Bed Co. v. State Corp. Comm'n</u>, 205 Va. 272, 275, 136 S.E.2d 900, 902 (1964).

Thus, the right to erect a "pier" as that term is used in Code § 62.1-164 must be construed in harmony with the provisions of Code § 28.2-1203(A)(5). Code § 28.2-1203(A)(5) requires that a person wishing to build, for noncommercial purposes, a private pier traversing Commonwealth bottomlands located between the mean low water mark and the line of navigability of a river must either (1) obtain a permit for such construction from the VMRC or (2) establish that traversing the Commonwealth's property is "necessary" for the placement of a pier that complies with the provisions contained in that code section. Code § 28.2-1203(A)(5) provides that "such piers *may include* an attached boat lift and an open-sided roof designed to shelter a single boat slip or boat lift." (Emphasis added). It also provides that "[i]n cases in which such roofs will exceed 700 square feet in coverage, and in cases in which an adjoining property owner objects to a proposed roof structure, permits shall be required as provided in § 28.2-1204." The General Assembly, by specifying the nature and size of a particular structure that may be included on a pier, has demonstrated its intention that a riparian pier authorized by Code § 28.2-1203(A)(5) may not include appurtenant structures not specifically authorized therein. Although the statute authorizes the erection of a roof of limited size over a single boat slip or lift, it makes no mention of a roof over the pier itself. It would be inconsistent to require a riparian owner to obtain a permit to construct a roof exceeding 700 square feet over a boat lift or boat slip while simultaneously permitting, subject to no height or other size restrictions whatever, the construction of a roof or deck structure over the pier itself.

Further, although the erection of a roof or second floor over a pier may enhance a riparian owner's enjoyment of his pier, such a structure is not "necessary" to the "placement" of a "pier" as authorized by Code § 28.2-1203(A)(5). <u>Cf.</u> 78 Op. Md. Atty. Gen. 26, 1993 WL 343619, *1

(Aug. 6, 1993) (holding "[a] pier *covering* is 'non-water dependent' whenever it has a purpose that could be served if the structure were located on land" and that the fact "[t]hat a structure would afford greater enjoyment to the owner were it located on a pier does not take the structure out of the class of 'non-water dependent' structures" (emphasis added)). Such an interpretation is consistent with the rights of riparian owners at common law to construct a pier for the purpose of accessing the navigable portion of an adjacent river, see Langley, 237 Va. at 62, 376 S.E.2d at 523, for purposes such as fishing, bathing, and boating, see Becker v. Litty, 566 A.2d 1101, 1104 (Md. Ct. App. 1989). "[O]nce the right of access is gratified, this particular [private] right of a riparian owner goes no further." Id. (holding that right of riparian owner "does not encompass a right of free navigation" and that "[t]he right to navigate on navigable waters is a public right, not one that attaches only to the owner of riparian property").

Such an interpretation also is consistent with the amendments the General Assembly made to the statute in 2003. Those amendments, made after the VMRC's decision in this case, place further restrictions on the dimensions of a pier constructed without a permit, requiring that such a pier "not exceed six feet in width" and that "any L or T head construction platforms or protrusions . . . not exceed 250 total square feet." 2003 Va. Acts, ch. 973. The amendments contain no language indicating error in the VMRC's conclusion that, pursuant to Code § 28.2-1205(A), the covered roof and deck structure on appellant's pier "represent[ed] an unauthorized encroachment over State-owned submerged lands and [was] not necessary for use of the pier or access to the river." Thus, the amendments represent acquiescence in the VMRC's interpretation of the statutes to require a permit for the inclusion on a pier of any non-water dependent structures not specifically authorized by the General Assembly.

Appellant complains that even if the VMRC does have the authority to regulate the architecture of private piers, it may not do so in this case because it has not "promulgated [any]

regulations that clearly prohibit the type of pier" he has constructed. Again, we disagree. As we held above, Code § 28.2-1203(A)(5) does not authorize appellant to construct a roof and deck on his pier. Thus, Code § 28.2-1203(A) required appellant to obtain a permit from the VMRC for the roof and deck. Pursuant to Code § 28.2-1204, the VMRC "is authorized to . . . [i]ssue permits for all reasonable uses of state-owned bottomlands not authorized under [Code § 28.2-1203(A)] . . . ." Code § 28.2-1205(A) sets out a non-exhaustive list of criteria the VMRC "shall consider" "[w]hen determining whether to grant or deny any permit for the use of state-owned bottomlands." The VMRC need not promulgate official regulations pursuant to Code § 28.2-1205(A) before it may issue or deny permits pursuant to the criteria in that code section. See Code § 28.2-103 ("The Commission shall exercise all of the powers herein conferred and *may* promulgate regulations and guidelines necessary to carry out the provisions of this title." (emphasis added)); see also SEC v. Chenery Corp., 332 U.S. 194, 203, 67 S. Ct. 1575, 1580, 91 L. Ed. 1995, 2002 (1947) ("[T]he choice between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency."), quoted with approval in NLRB v. Bell Aerospace Co, 416 U.S. 267, 292-93 & n.23, 94 S. Ct. 1757, 1770-71 & n.23, 40 L. Ed. 2d 134, 152-53 & n.23 (1974). It is the governing statutes, not the guidelines, that determine the scope of appellant's pier-building rights. Any failure of the VMRC to comply with the statutory requirements, if any, for the promulgation of its Subaqueous Guidelines does not defeat its duty to apply Code § 28.2-1203(A) to safeguard the Commonwealth's resources.

Thus, we affirm the trial court's conclusion that a permit was required in order for appellant to construct the roof/deck structure on his pier.

III.

For these reasons, we hold Code § 28.2-1203 limits the riparian owner's rights such that he may build, without a permit, only those structures "necessary" or essential to the placement of a private pier for the limited purpose of accessing navigable waters or vessels moored in those waters.  The riparian landowner may not build, without a permit, "incidental appendages" designed merely to "enhance[] the primary purpose of the pier."  Thus, we affirm the circuit court's decision affirming the VMRC's order to appellant to remove the offending structure.  Because appellant has challenged only the conclusion that Code §§ 28.2-1203 and 62.1-164 did not authorize him to build the roof and deck structure without a permit, we do not consider whether the VMRC acted arbitrarily and capriciously in rejecting appellant's request for approval of the structure after-the-fact.

Affirmed.