803 A.2d 146 (2002)
353 N.J. Super. 415
Sophie BUBIS and Alicides Ferreira, Plaintiffs-Appellants/ Cross-Respondents,
and
Jacinto Rodrigues, Plaintiff,
v.
Jack A. KASSIN and Joyce Kassin, husband and wife, Defendants-Respondents/ Cross-Appellants,
and
Board of Trustees of the Village of Loch Arbour, Defendants-Respondents,
and
State of New Jersey, Department of Environmental Protection, Defendant.
Franklin R. Remondelli, Teresa J. Kuchon, William Kuchon, Arlene Dee Rose, Jeffery J. Gill, William E. Robertson, Myrtle P. Robertson, Mary Gosline, Charles P. Hoffman, Judith L. Hoffman, Dianne S. Williams, and Plaintiffs-Appellants/ Cross-Respondents,
v.
Jack A. Kassin and Joyce Kassin, husband and wife, Defendants-Respondents/ Cross-Appellants,
and
Board of Trustees of the Village of Loch Arbour, Defendants-Respondents,
and
State of New Jersey, Department of Environmental Protection, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 2002.
Decided July 26, 2002.
*147 Leonard S. Needle, Fair Haven, argued the cause for appellants/cross-respondents Bubis and Ferreira.
Richard O. Venino, Sea Girt, argued the cause for appellants/cross-respondents Remondelli, Kuchon, Rose, Gill, Robertson, Gosline, Hoffman, and Williams.
David C. Apy, Newark, argued the cause for respondents/cross-appellants Jack A. and Joyce Kassin (McCarter & English, attorneys; Mr. Apy, of counsel and on the brief).
Arnold B. Levin, West Long Branch, argued the cause for respondent Board of Trustees of the Village of Loch Arbour (Levin & Spector, attorneys; Mr. Levin, on the brief).
Before Judges SKILLMAN, WALLACE JR. and CARCHMAN.
The opinion of the court was delivered by *148 SKILLMAN, P.J.A.D.
In Bubis v. Kassin, 323 N.J.Super. 601, 609-14, 733 A.2d 1232 (App.Div.1999), we concluded that the deeds to the predecessors in title of owners of inland lots in the Village of Loch Arbour had conveyed implied private easements over Edgemont and Euclid Avenues to afford access to the beach and ocean. Accordingly, we reversed the dismissal of plaintiffs' claims to private easements over those roads and remanded the case to the trial court to determine an appropriate remedy against defendants Jack and Joyce Kassin, who own the land that the Edgemont Avenue easement and half of the Euclid Avenue easement cross, and Loch Arbour, which owns the other half of the land that the Euclid Avenue easement crosses. In addition, we concluded that the trial court had failed to consider plaintiffs' claim that a six-foot-high chain link fence constructed along the western boundary of the Kassins' property on Ocean Place violates a restrictive covenant that prohibits any fence more than four feet high within fifty feet of Edgemont Avenue or Ocean Place. Id. at 615-16, 733 A.2d 1232. Consequently, we also remanded this claim.
After our remand of Bubis, twelve other Loch Arbour property owners filed a second complaint, which also sought enforcement of the implied private easement over Edgemont and Euclid Avenues recognized in our prior opinion. Remondelli v. Kassin, C-84-00. This new complaint also asserted a claim of a right of access to the beach and ocean under the public trust doctrine. See Borough of Neptune City v. Borough of Avon-by-the-Sea, 61 N.J. 296, 303-10, 294 A.2d 47 (1972). The trial court consolidated the Remondelli plaintiffs' claim for enforcement of the implied private easement over Edgemont and Euclid Avenues with Bubis and severed their public trust doctrine claim.[1]
The Bubis plaintiffs asked the trial court to expand the scope of the issues on remand to include whether a sand berm the Kassins had erected on their property constituted a fence within the meaning of the restrictive covenant that prohibits any fence more than four feet in height within fifty feet of Edgemont Avenue or Ocean Place. However, the court denied this application on the ground that permitting assertion of this claim would "fall[ ] outside the Appellate Division's mandate."
Before trial, Loch Arbour served an offer of judgment upon both the Bubis and Remondelli plaintiffs under the offer of judgment rule, R. 4:58, offering to install a new pedestrian gate at the entrance to the beach at the end of Euclid Avenue in exchange for plaintiffs' dismissal of their claims. Plaintiffs did not accept this offer.
The primary contested factual issues at trial were whether Loch Arbour residents enjoyed unimpeded access to the beach and ocean along Edgemont Avenue before the Kassins acquired their property in 1995 and whether the Kassins' predecessors in title maintained a fence along the western boundary of the property on Ocean Place that was greater than the four foot height allowed under the restrictive covenant.
Plaintiffs' witnesses testified that the Kassins' predecessors had operated the property as a private beach club since sometime in the 1960s. The beach club blocked access to the beach along Edgemont Avenue by means of a gate, and Loch Arbour residents were required to belong to the club to gain access to the beach during daylight hours in the summer. However, according to plaintiffs' witnesses, the gate was left unlocked at *149 other times, and thus Loch Arbour residents enjoyed unimpeded access to the beach and ocean along Edgemont Avenue during evening hours in the summer and at all times the rest of the year. On the other hand, the Kassins' witnesses testified that the gate blocking access to the beach and ocean along Edgemont Avenue was kept locked except when the beach club was open. These witnesses acknowledged that there were occasions when the gate may have been left unlocked, but they asserted that the Kassins' predecessors would promptly address any such lapse in security and that ordinarily the gate was kept locked outside the beach club's normal business hours.
The trial court resolved this factual dispute in favor of the Kassins, finding that "the Kassins' predecessors exerted exclusive control and dominion over the gate and sought to prevent Loch Arbour's residents, or anyone else, from gaining access to the beach through Edgemont Avenue... by locking the gates on Edgemont Avenue when the beach club was not in operation."
In support of their claim to direct access to the beach and ocean along Edgemont Avenue, plaintiffs also presented evidence that plaintiff Bubis would have to walk approximately an additional three hundred feet to gain access to the beach if the court declined to compel access along Edgemont Avenue and that some of the other plaintiffs would be required to walk lesser additional distances. In opposing plaintiffs' claim, defendant Jack Kassin testified that enforcement of plaintiffs' implied private easement along Edgemont Avenue would impose a severe burden upon him and his family by interfering with their peaceful enjoyment of the property and creating a security risk.
Based on this evidence, the trial court concluded that plaintiffs' easement along Edgemont Avenue should not be enforced. Initially, the court rejected plaintiffs' argument that our prior opinion required enforcement of the easement along Edgemont Avenue, regardless of what the evidence showed concerning past usage of this easement or the relative hardship upon the parties of granting such relief. The court then concluded that a balancing of equities required the denial of a mandatory injunction compelling the Kassins to provide access to the beach along Edgemont Avenue:
The reopening of Edgemont Avenue over [the Kassins'] property would have the material, substantial and devastating impact of dividing the property in half and drastically limiting the beneficial use of the property by the Kassins, their children, family and friends, and doubtlessly have a negative impact upon the value of the property and its marketability....
A comparison of the inconvenience to plaintiffs Bubis and Ferreira of an additional short walk to access the beach if Edgemont Avenue remains closed with the Kassins' harm ... if the gate at Edgemont were to be reopened clearly demonstrates that the relief which plaintiffs seek must be refused.... This court is quite satisfied that this is a situation where the granting of the maximum relief sought by plaintiffs would lead to an inequitable decree.... [D]espite the fact that they have an established implied easement in the location in question, as the Appellate Division has determined, they were also required to demonstrate their hardship, if equitable relief is not awarded, is not merely a matter of inconvenience but of sufficient magnitude as to call for the application of the strong arm of the court of equity. This they have failed to do.
*150 The court further concluded that plaintiffs' interest in the access easement along Edgemont Avenue could be adequately vindicated by relocation of the easement to the southern boundary of the Kassins' property, which is approximately 300 feet from Edgemont Avenue:
[C]onsidering the hardships involved,... this court finds that a minor modification can be made with respect to the location of the easement which still preserves the essential rights which plaintiffs seek to vindicate. In his testimony, defendant Jack Kassin stated that he would be willing to construct a paved walkway along the southerly border of his property to the beach having various amenities, such as lighting, fencing and appropriate signage. Considering the relatively minor impact such a relocation of the easement will have on plaintiffs Bubis and Ferreira (and the complete lack of an impact on the remaining plaintiffs), and the avoidance of serious injury to the interests of defendants, and the retention of the essential intent of the original grantor of access to the beach throughout the village, the only fair and equitable result, commensurate with common sense, requires the relocation of the easement to the southerly side of the Kassin property.
Accordingly, the court entered judgment denying plaintiffs' claim for a mandatory injunction permitting their unimpeded use of the implied private easement along Edgemont Avenue, conditioned upon the Kassins relocating the easement to the southern boundary of their property.
In connection with the other primary contested factual issue, relating to the continuing viability of the restriction prohibiting the erection of any fence more than four feet high along Edgemont Avenue or Ocean Place, plaintiff Bubis testified that the chain link fence that the Kassins' predecessors in title maintained along Ocean Place did not exceed this four-foot height restriction. On the other hand, the Kassins' witnesses testified that the predecessors' fence was around the same height as the present fence, which is approximately six feet.
The trial court resolved this factual dispute in favor of the Kassins, finding that their predecessors had maintained a chain link fence along Ocean Place between 1967 and 1994 that "was in excess of five feet high." The court also found based on undisputed evidence that Loch Arbour currently maintains a six foot high fence on its property located on Ocean Place and that it had previously maintained a fence at that location that ranged from five to seven feet in height. Based on these findings, the trial court concluded that the restrictive covenant prohibiting any fence more than four feet in height within fifty feet of Edgemont Avenue or Ocean Place had been abandoned.
In addition to evidence relevant to enforcement of the implied easement along Edgemont Avenue and the continuing vitality of the fence restrictive covenant, plaintiffs also presented evidence regarding the alleged interference with their access to the beach and ocean along the Euclid Avenue easement. However, the trial court concluded that this evidence was insufficient to support a finding that Loch Arbour or the Kassins had interfered with plaintiffs' use of their Euclid Avenue easement. The court also concluded that in the absence of evidence of such interference, Loch Arbour was entitled to a judgment dismissing plaintiffs' complaint.
After trial, Loch Arbour filed a motion for an award of legal fees and costs under the offer of judgment rule. The trial court granted the motion and entered an order requiring plaintiffs to pay Loch Arbour *151 $3813.70 for its legal fees and costs incurred in the trial.
On appeal, plaintiffs argue that the trial court lacked authority to deny a mandatory injunction enforcing their right of access to the beach and ocean along Edgemont Avenue, and alternatively, even if the court had such authority, the evidence did not warrant denying enforcement of the easement. In addition, the Bubis plaintiffs argue that the trial court erred in concluding that the restrictive covenant prohibiting the maintenance of any fence more than four feet in height within fifty feet of Edgemont Avenue or Ocean Place had been abandoned, in refusing to allow them to assert a claim that the sand berm the Kassins erected on the property violates this covenant and dismissing their complaint against Loch Arbour. Both groups of plaintiffs also challenge the award to Loch Arbour of counsel fees and costs under the offer of judgment rule. The Kassins have filed a cross-appeal in which they argue that plaintiffs' implied easement along Edgemont Avenue was extinguished by adverse possession.
We consolidate the Bubis and Remondelli appeals, and affirm in part and reverse in part. We dismiss the Kassins' cross-appeal.

I
We first consider plaintiffs' argument that the trial court lacked authority to deny enforcement of their implied private easement along Edgemont Avenue.
The relevant dispositional paragraph of our prior opinion "remanded [the case] to the trial court to afford the parties an opportunity to present evidence on arguments relating to remedies and for the trial court to make findings of fact and conclusions of law with respect to plaintiffs' demands for relief." 323 N.J.Super. at 614, 733 A.2d 1232. This order was broad and open-ended. We did not just remand for the entry of a judgment in plaintiffs' favor enforcing the implied easements. Instead, we remanded for the presentation of evidence "relating to remedies" and findings of fact and conclusions of law with respect to plaintiffs'"demands for relief." Thus, by its plain terms, our remand order did not require the trial court simply to enforce plaintiffs' implied access easement along Edgemont Avenue.
Moreover, a court of equity ordinarily has broad discretion in determining whether to grant injunctive relief. See Horizon Health Ctr. v. Felicissimo, 135 N.J. 126, 137, 638 A.2d 1260 (1994). Therefore, the trial court correctly concluded that it was required to consider the relative hardships to the parties as well as other equitable circumstances in determining whether to grant equitable relief enforcing plaintiffs' implied private easement along Edgemont Avenue.
It also was within the court's authority to condition the denial of plaintiffs' claim for injunctive relief enforcing the easement along Edgemont Avenue upon the Kassins agreeing to provide substitute access along the southern boundary of their property. As we observed in Kline v. Bernardsville Ass'n, Inc., 267 N.J.Super. 473, 479, 631 A.2d 1263 (App.Div.1993), "our courts have permitted relocation of easements without consent by denying injunctive relief to easement holders who sought to compel landowners to remove obstacles and restore their rights of way to their former condition." See also Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 603-08, 202 A.2d 405 (1964).
In short, the trial court clearly had the authority to withhold the equitable relief sought by plaintiffs. The only question is whether the court abused its discretion in denying that relief conditioned upon the *152 Kassins agreeing to provide substitute access.

II
The trial court's determination that plaintiffs should not be granted injunctive relief to enforce their implied easement along Edgemont Avenue rested in part on a factual finding that for nearly thirty years the Kassins' predecessors had blocked access to the beach and ocean along Edgemont Avenue except to members of the beach club. Although plaintiffs challenge this factual finding, we are satisfied that it is supported by adequate, substantial and credible evidence and thus is binding upon us in reviewing the trial court's denial of injunctive relief. See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
Our review of an order granting or denying injunctive relief is limited to determining whether the trial court abused its discretion. See Horizon Health Ctr., supra, 135 N.J. at 137, 638 A.2d 1260. Although the trial court understated the adverse impact upon plaintiff Bubis of denial of enforcement of the easement along Edgemont Avenue, we are unable to conclude that its decision to deny such injunctive relief, conditioned upon the Kassins providing a substitute easement along the southern boundary of their property, constituted an abuse of discretion. In particular, we concur with the trial court's finding that enforcement of the easement would have a severe adverse effect upon the Kassins' beneficial enjoyment of their property and that that adverse effect substantially outweighs the inconvenience to plaintiffs in being required to walk the additional distance to Euclid Avenue or the substitute easement along the southern boundary of the Kassins' property to gain access to the beach and ocean.
However, the trial court's rationale for denying an injunction enforcing the easement along Edgemont Avenue does not support the extinguishment of that easement. The hardship to the Kassins that the court relied upon in denying injunctive relief will continue to exist only so long as their property is held in its current unitary ownership. If the property is subdivided, it may be appropriate to enforce the easement along Edgemont Avenue at that time. See 2 Restatement (Third) of Property: Servitudes, § 8.3 cmt. a (noting that the denial of relief enforcing a servitude "does not usually result in termination. The servitude ... may become enforceable under other circumstances in which its enforcement would not be inequitable[.]"). We appreciate that the judgment does not expressly state that the Edgemont Avenue easement is extinguished, but the use of the term "relocate" could be construed to have that effect. Therefore, we remand for entry of an amended judgment which clearly states that the establishment of the easement along the southern boundary of the Kassins' property is a condition of the denial of an injunction enforcing the Edgemont Avenue easement, but that this does not extinguish the easement.

III
The trial court's determination that there has been an abandonment of the restrictive covenant that prohibits any fence more than four feet high within fifty feet of Edgemont Avenue or Ocean Place was predicated on its findings that the Kassins' predecessors maintained a fence along Ocean Place between 1967 and 1994 that was "in excess of five feet high," that Loch Arbour presently maintains a six foot high fence along Ocean Place and maintained fences between five and seven feet high for more than twenty years, and that *153 thirteen of the sixteen lots along Ocean Place have fences that exceed the four-foot height restriction. These factual findings are supported by adequate, substantial and credible evidence and are therefore binding upon us. See Rova Farms Resort, supra, 65 N.J. at 484, 323 A.2d 495. Such findings provide the requisite evidential support for the dismissal of the Bubis plaintiffs' claim seeking the removal of the six-foot-high chain link fence the Kassins maintain along Ocean Place.[2]

IV
We turn next to the Bubis plaintiffs' argument that the trial court erred in refusing to allow them to assert a claim that the Kassins are violating the fence restrictive covenant by maintaining a sand berm that is more than four foot high within fifty feet of Ocean Place and Edgemont Avenue.
The trial court concluded that because this court remanded the case for a determination of a remedy with respect to plaintiffs' implied easement over Edgemont and Euclid Avenues and consideration of plaintiffs' claim that the Kassins' chain link fence violates the restrictive covenant, it was precluded from considering plaintiffs' claim that the sand berm also violates the restrictive covenant because that would "go beyond the terms of [the Appellate Division's] mandate." The court relied upon "[t]he principle ... that [a] trial court is under a peremptory duty to obey in the particular case the mandate of the appellate court precisely as it is written." Flanigan v. McFeely, 20 N.J. 414, 420, 120 A.2d 102 (1956).
However, our only mandate was an affirmative directive to the trial court to determine a remedy with respect to plaintiffs' easements over Edgemont and Euclid Avenues and consider plaintiffs' claim that the Kassins' chain link fence violates the restrictive covenant. This mandate did not prohibit the court from granting plaintiffs leave to assert a new claim or legal theory. See Casey v. Planned Parenthood of Southeastern Pa., 14 F.3d 848, 857 (3d Cir.1994) ("The mandate rule applies... only to those issues that were decided by the appellate court."). Therefore, the trial court erred in concluding that it was foreclosed by our mandate from allowing plaintiffs to assert a claim that the Kassins' sand berm violates the fence restrictive covenant.
We also conclude that under the circumstances of this case plaintiffs should have been allowed to assert this claim. Our remand specifically required the trial court to consider plaintiffs' claim that the Kassins' chain link fence violates the restrictive covenant that prohibits any fence more than four feet in height within fifty feet of Edgemont Avenue or Ocean Place. Plaintiffs' claim that the sand berm in back of the chain link fence also violates the same restrictive covenant was closely related to this claim and thus could have been considered without significantly expanding *154 the scope of the remand. Furthermore, the Bubis plaintiffs' complaint had sought to require removal of the sand berm on the ground that it obstructed their view of the ocean and was a "nuisance." Although we rejected this claim in our prior opinion, 323 N.J.Super. at 616, 733 A.2d 1232, the assertion of this claim put the Kassins on notice at the very outset of this litigation that the removal of the sand berm was one element of the relief plaintiffs were seeking. In addition, if it is ultimately determined that the berm violates the fence restrictive covenant, this would be a continuing wrong, which a court should be hesitant to preclude a party from seeking to remedy.

V
The Bubis plaintiffs argue, in a supplemental brief filed by leave of court, that the trial court erred in granting Loch Arbour's motion for an involuntary dismissal of their claim for enforcement of their access easement to the beach and ocean along Euclid Avenue.
The Bubis plaintiffs' amended complaint sought, among other things, "an Order declaring that plaintiffs have a right of access and egress to and from the area designated as `Beach and Bluff' by means of Euclid Avenue as shown on the Map of Loch Arbour." Our prior opinion sustained this claim. Consequently, even if the trial court had concluded that there was no need for injunctive relief to protect plaintiffs' use of their easement along Euclid Avenue, plaintiffs would have been entitled at a minimum to a declaratory judgment memorializing our decision concerning the existence of the easement, which would provide a foundation for seeking injunctive relief if Loch Arbour or the Kassins were to interfere with plaintiffs' right of access along Euclid Avenue at some time in the future. See N.J.S.A. 2A:16-59, -60; Township of Washington v. Gould, 39 N.J. 527, 533, 189 A.2d 697 (1963); Keuper v. Wilson, 111 N.J.Super. 502, 509, 268 A.2d 760 (Ch.Div.1970). Nevertheless, the trial court dismissed plaintiffs' claim against Loch Arbour, thereby depriving plaintiffs of even that minimal protection.
In any event, we are satisfied that plaintiffs presented sufficient evidence of interference with their right of unimpeded access to the beach and ocean along Euclid Avenue to establish a prima facie case for injunctive relief. Plaintiffs testified that although they were able to gain access to the beach and ocean through the Euclid Avenue double gate, the gate was always locked with a chain, albeit a slackened one. Some plaintiffs testified that they had to squeeze through the gate and that this was sometimes difficult to do. For example, plaintiff Arlene Dee Rose testified: "You have to go in sideways and duck down and just kind of like wiggle through." Loch Arbour did not present any evidence to justify this interference with plaintiffs' right of access along Euclid Avenue because the claim against Loch Arbour was dismissed at the close of plaintiffs' case.
In dismissing plaintiffs' claim against Loch Arbour, the court concluded that any interference by Loch Arbour with plaintiffs' easement along Euclid Avenue was minimal, especially in view of the availability of other access a short distance to the north of Euclid Avenue. However, in the absence of any showing by Loch Arbour of a compelling justification for interfering with plaintiffs' easement, the deeds to the Loch Arbour property owners gave plaintiffs a right to unimpeded access to the beach and ocean along Euclid Avenue. Therefore, the trial court erred in dismissing the claim against Loch Arbour at the close of plaintiffs' case.

*155 VI
Our conclusion that the order dismissing plaintiffs' claim against Loch Arbour must be reversed also requires the reversal of the order awarding Loch Arbour legal fees and costs under the offer of judgment rule. A defendant who makes an offer of judgment is entitled to attorney's fees "for such subsequent services as are compelled by the non-acceptance" only if "the determination [of the case] is at least as favorable to the offeror as the offer." R. 4:58-3. Because we have reversed the dismissal of plaintiffs' claims against Loch Arbour and remanded the case for further proceedings against this defendant, it is clear, in the present posture of the case, that the determination of the case is not "at least as favorable to the offeror as the offer" and therefore that the award to Loch Arbour must be reversed. This conclusion makes it unnecessary to consider whether the kind of offer Loch Arbour made to plaintiffs could provide a foundation for an award under the offer of judgment rule if Loch Arbour had prevailed in the litigation. See Frigon v. DBA Holdings, Inc., 346 N.J.Super. 352, 354-57, 787 A.2d 966 (App.Div.2002).

VII
The Kassins have filed a cross-appeal from the part of the final judgment which conditioned the denial of plaintiffs' claim for an injunction enforcing the Edgemont Avenue easement upon their agreeing to create an easement along the southern boundary of their property. In support of the cross-appeal, the Kassins argue that the implied easement was extinguished by adverse possession. However, the Kassins did not file a counterclaim asserting a claim based on adverse possession. Moreover, even though the Kassins presented this argument in their trial brief and proposed findings of fact and conclusions of law, the trial court did not mention the argument in its twenty-five page opinion. Thus, the court apparently viewed this argument as merely ancillary to the Kassins' primary argument that the court should not grant injunctive relief enforcing the easement. Most significantly, the final judgment does not contain any disposition of a claim by the Kassins to unencumbered title to Edgemont Avenue by virtue of adverse possession.
It is fundamental that appeals are taken only from judgments. See Heffner v. Jacobson, 100 N.J. 550, 553, 498 A.2d 766 (1985). Consequently, if the Kassins believed that they had asserted a claim based on adverse possession that the trial court failed to decide, they should have filed a motion for reconsideration drawing the court's attention to its failure to pass upon this claim. However, such a motion was not filed, and thus there is no trial court ruling upon an adverse possession claim for this court to review. Therefore, the Kassins' cross-appeal is dismissed.
Accordingly, we reverse the orders granting Loch Arbour's motion to dismiss the complaint and denying the Bubis plaintiffs' application for the trial court to consider whether the sand berm adjacent to the chain link fence on the Kassins' property violates the fence restrictive covenant. We also reverse the order awarding Loch Arbour $3813.70 in counsel fees and costs against both groups of plaintiffs under the offer of judgment rule. We affirm the parts of the final judgment denying plaintiffs' claim for removal of the Kassins'six-foot-high chain link fence along Ocean Place and denying injunctive relief to enforce plaintiffs' easement along Edgemont Avenue, subject to entry of an amended judgment clearly stating that this easement is not extinguished. We dismiss the Kassins' cross-appeal.
NOTES
[1] We are advised that this claim has been settled.
[2] Although the trial court concluded that the violations of the restrictive covenant have resulted in its "abandonment," the pattern of past violations do not establish a total abandonment that would allow construction of a fence that is more than six feet in height or of a different type than the Kassins' current fence. Therefore, it would have been more accurate to say that those violations resulted in a modification of the covenant under which a six-foot-high chain link fence of the sort maintained by the Kassins is not prohibited. See Steiger v. Lenoci, 323 N.J.Super. 529, 536-37, 733 A.2d 1192 (App.Div.1999); see also 2 Restatement (Third) of Property: Servitudes, supra, § 7.10. In any event, the trial court's erroneous characterization of the effect of the past violations of the restrictive covenant does not undermine its conclusion that the Bubis plaintiffs are not entitled to any relief with respect to the Kassins' six-foot-high chain link fence.