**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1900-23

COLE SEA BRIGHT, LLC,

      Plaintiff-Respondent,

v.

JERSEY CENTRAL POWER &
LIGHT COMPANY,

      Defendant-Appellant.

_____

Submitted October 9, 2024 – Decided October 22, 2024

Before Judges Mayer and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-000126-23.

Bertone Piccini, LLP, attorneys for appellant (Anthony Bianco, of counsel and on the briefs).

Ansell Grimm & Aaron, PC, attorneys for respondent (Seth M. Rosenstein and Brian J. Ashnault, on the brief).

PER CURIAM

By leave granted, defendant Jersey Central Power & Light Company, a subsidiary of FirstEnergy Corporation, appeals from a January 23, 2024 order compelling it to remove a utility pole and associated wires that plaintiff Cole Sea Bright, LLC contends are on property that it owns. For the reasons that follow, we vacate the January 23, 2024 order and remand for further proceedings consistent with this opinion.

We recite the facts from the limited record developed on the return date of plaintiff's order to show cause (OTSC). Plaintiff, a New Jersey limited liability company, owns real property at 26 New Street in Sea Bright, New Jersey.

Defendant, a New Jersey corporation, provides electrical service to customers. Defendant owns the electrical wires connected to a utility pole on plaintiff's property. However, defendant asserts Verizon owns the utility pole and has an easement to allow the utility pole on plaintiff's property.

In 2012, the home on plaintiff's property was significantly impacted by Hurricane Sandy. As a result, the home was declared uninhabitable.

After the storm, plaintiff was ordered to rehabilitate or reconstruct the home to comply with Federal Emergency Management Agency (FEMA) regulations. Plaintiff sought to build a new home on the property and required

2

A-1900-23

various permits and approvals from the municipality to do so. The municipality mandated defendant sign off on plaintiff's requested permits. However, defendant declined to do so due to "the [u]tility [p]ole's close proximity" to the planned structure.

On August 21, 2020, plaintiff sent a letter to defendant stating the utility pole and associated wire "pose[d] an obstacle" to its building of a new home. Within ten days of the date of that letter, plaintiff demanded defendant relocate the utility pole and wires "a safe distance from the house to a location that does not impede expansion of the [p]roperty." Defendant did not comply.

Three weeks later, plaintiff sued defendant for various relief, including defendant's removal of equipment on plaintiff's property.[1] The parties dismissed that action without prejudice based on their collective efforts to reach an amicable resolution.

On December 8, 2022, plaintiff received a violation notice from the Borough of Sea Bright (Borough) for violating its zoning code. The Borough required plaintiff to demolish the house because it was unsafe and posed a danger to the community. The notice gave plaintiff ten days to remedy the

---

[1] Cole Sea Bright, LLC v. Jersey Cent. Power & Light Co., Docket No. MON-C-116-20.

A-1900-23

violation. If plaintiff failed to do so, the Borough advised it could impose a fine of $500 per day.

Plaintiff told the Borough about the ongoing negotiations with defendant for the removal of the utility pole and wires. Plaintiff represented that the location of the utility pole and wires impaired its ability to demolish the structure. Based on that representation, the Borough agreed to temporarily suspend enforcement of its violation notice to allow the parties to resolve the issue.

On April 25, 2023, plaintiff received a municipal summons for violating the Borough's zoning code. The municipal court scheduled a hearing for December 6, 2023. However, the municipal court appearance was adjourned.[2]

In the interim, defendant sent an August 24, 2023 email to plaintiff "requir[ing] a deposit of $5,000 . . . to begin [the] design phase [for relocating the utility pole] because th[e] project is a billable project." Upon receipt of the deposit amount, defendant stated its engineer would start the design work and prepare a cost estimate.

---

[2] The record does not reflect whether the municipal court ever conducted a hearing regarding plaintiff's violation of the Borough's zoning code.

A-1900-23

Plaintiff declined to pay the deposit amount. Plaintiff contended it paid a "surveyor $2,200.00 . . . , which should have been an expense borne by [defendant] . . . [and] also incurred over $10,000.00 in attorneys' fees and costs relating to the . . . municipal demolition order, which would not have been incurred but for [defendant's] failure to remove the encroaching poles and wires." Plaintiff demanded defendant relocate the utility pole and wires to a new location "within a time certain."

On September 22, 2023, plaintiff again sued defendant. In its complaint, plaintiff sought a judicial determination that defendant had no easement on its property. Additionally, plaintiff requested declaratory relief compelling defendant to remove the utility pole and electrical wires. Defendant filed an answer and affirmative defenses.

A month later, plaintiff filed an OTSC to compel defendant's removal of the utility pole and electrical wires. Plaintiff alleged "immediate and irreparable damage will probably result before notice can be given and a hearing held and for good cause shown." In a December 1, 2023 order, the judge scheduled an OTSC hearing for January 17, 2024.

In support of its OTSC, plaintiff filed certifications from Christopher Cole, an owner and principal of plaintiff, and Seth M. Rosenstein, plaintiff's

5

counsel. In response, defendant submitted certifications from George Salazar, supervisor of engineering services for defendant's parent company, FirstEnergy Corporation, and Anthony Bianco, defendant's counsel.

According to Salazar's certification, the utility pole is located in a public right of way and not on plaintiff's property. Additionally, he certified the utility pole is owned by Verizon and, therefore, defendant could not remove the pole without Verizon's consent. Further, Salazar stated defendant "simply runs its electrical power lines through [the utility pole] to distribute electricity" to homes located on the streets surrounding plaintiff's property. If the utility pole and wires were removed, Salazar explained electric service to the nearby homes would be "negatively impacted."

Plaintiff submitted a reply brief and supplemental certification from Cole the afternoon prior to the OTSC return date. Because plaintiff's reply submissions were received late in the afternoon on January 16, 2024, the judge explained he "did not have an opportunity to read it."[3]

---

[3] Plaintiff's reply brief in support of the OTSC and Cole's supplemental certification referred to a February 9, 2023 engineering report and appended several photographs of the home's exterior. In its appellate appendix, plaintiff provided a copy of the February 9, 2023 engineering report and photographs even though the judge stated he had not reviewed those submissions. Significantly, nothing in that engineering report addressed plaintiff's inability to demolish the structure absent relocating the utility pole and wires.

At the OTSC oral argument, the judge summarized the dispute as follows:

> The plaintiff owns property in Sea Bright . . . [t]here's a question as to whether or not this utility pole is on [plaintiff]'s property or not. [Defendant's] papers say, no, it's in the right-of-way. I don't know whether that necessarily means it's on the property, per se. But that's a factual dispute, right? Whether it's on . . . [plaintiff]'s property or not.
>
> Let me cut to the chase. So, [plaintiff says] . . . we can't effectuate demolition of this structure that was damaged during Hurricane Sandy, unless and until JCP&L or whoever the owner is, Verizon or JCP&L moves the utility pole and the overhanging wires. Right?

At the hearing, the judge asked plaintiff's counsel if plaintiff had expert testimony confirming the house could not be demolished without removing the utility pole. In response, counsel stated plaintiff had an engineer's report and photographs depicting utility wires overhanging the property which made it "impossible for construction vehicles and construction equipment to get in there."

Without allowing defense counsel to address the statements by plaintiff's counsel, the judge stated: "That answers that question." Defendant argued the statements by plaintiff's counsel were speculative and there was no testimony regarding the inability of contractors to demolish the house without removal of the utility pole and wires.

7

In finding defendant obligated to remove the electrical wires and utility pole, the judge stated:

> I didn't see the reply [brief]. I didn't see the photographs. But I mean, from what I see about this photograph[4], I'm . . . willing to believe that if this could be done, it would have been done a long time ago[,] because why else would they be continuing to operate under an ordinance summons that's fining them . . . $500 a day?

The judge then questioned why defendant had yet to move the utility pole and wires. Defense counsel responded the New Jersey Board of Public Utilities (BPU) regulations applied to the situation.[5] Defense counsel told the judge that

---

[4] During the OTSC hearing, plaintiff's counsel provided one of the photographs attached to the February 9, 2023 engineer's report for the judge's review.

[5] See Tariff, Atl. City Elec. Co., BPU NJ No. 11, First Revised Sheet No. 24, Section 4.09, which provides:

> Request for Relocation of, or Work on, Company Facilities: When the Company is requested to relocate or work on its facilities and such relocation or work is for the purpose of enabling the Customer to work on or maintain his electrical facilities or building, or perform work or construction safely in the vicinity of Company equipment, the Customer shall pay to the Company, in advance of any relocation or work by the Company, the estimated cost to be incurred by the Company in performing such relocation or work.

A-1900-23

when "a . . . customer requests relocation of lines due to construction, . . . it's at their cost."

In rejecting defendant's legal arguments in opposition to the OTSC, the judge noted plaintiff was "going [to] get fined up the wazoo" and urged defendant "to do this right now and worry about the cost later." The judge suggested defendant could sue plaintiff to recover costs if defendant believed plaintiff bore responsibility for the costs associated with relocating the utility pole and wires. The judge explained he had "no reason to disbelieve" plaintiff's assertion "that [it] can't do anything until those lines and pole are removed."

During the OTSC argument, defense counsel challenged the judge's finding that plaintiff suffered non-economic harm. Defense counsel argued plaintiff bore the burden of proof, under a clear and convincing standard, in support of its request for injunctive relief.

However, the judge stated he was satisfied plaintiff met its burden for injunctive relief and instructed defendant to remove the utility pole and wires. The judge told defendant:

> I don't care what you need to do to do it. Whatever cost you incur, you bear it. And then if . . . you don't think you should be bearing any cost[,] . . . you can file a claim for money damages against [] plaintiff in the [L]aw [D]ivision. This is a court of equity. I'm ordering the removal forthwith of that pole and that

A-1900-23

utility line, so that this demolition order can be effectuated. That's my decision.

In his January 23, 2023 order, the judge compelled defendant "to remove the utility pole . . . and electrical wires present on and above the property located at 26 New Street, Sea Bright, New Jersey forthwith and as soon as is practicable, but in no event later than March 4, 2024." In a February 26, 2024 order, we stayed the judge's January 23, 2024 order and granted defendant's motion for leave to appeal.

On appeal, defendant contends the judge abused his discretion by granting plaintiff's OTSC compelling defendant to remove the utility pole and electrical wires on plaintiff's property. Specifically, defendant argues the judge failed to make the requisite findings of fact and conclusions of law to support the relief ordered. Defendant also contends plaintiff failed to meet its burden of proof for injunctive relief. Specifically, defendant argues plaintiff failed to prove by clear and convincing evidence: 1) plaintiff would suffer irreparable harm; 2) plaintiff was likely to succeed on the merits; and 3) a balancing of hardships favored plaintiff. Further, defendant asserts there were controverted material facts which precluded plaintiff's request for injunctive relief. We agree.

We review a judge's decision to grant or deny a preliminary injunction for an abuse of discretion. N. Bergen Mun. Utils. Auth. v. I.B.T.C.W.H.A. Loc.

10

125, 474 N.J. Super. 583, 590 (App. Div. 2023). A "court of equity ordinarily has broad discretion in determining whether to grant injunctive relief." In re Adoption of Child by M.E.B., 444 N.J. Super. 83, 89 (App. Div. 2016) (quoting Bubis v. Kasin, 353 N.J. Super. 415, 424 (App. Div. 2002)). We will not reverse the judge's discretionary decision unless it was "made without a rational explication, inexplicably departed from established practices, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002). "An interlocutory injunction is an extraordinary equitable remedy utilized to forbid and prevent irreparable injury, and it must be administered with sound discretion and always upon consideration of justice, equity, and morality in a given case." Coskey's Television & Radio Sales & Serv., Inc. v. Foti, 253 N.J. Super. 626, 639 (App. Div. 1992) (quoting Zoning Bd. of Adjustment Sparta Twp. v. Serv. Elec. Cable Television of N.J., Inc., 198 N.J. Super. 370, 379 (App. Div. 1985)).

The New Jersey Supreme Court "recognize[d] that the determination to authorize preliminary relief summons the most sensitive exercise of judicial discretion." Crowe v. DeGioia, 90 N.J. 126, 132 (1982). To guide courts in their exercise of that discretion, the Court established the following factors, known as the Crowe factors: a preliminary injunction should not issue except

when necessary to prevent irreparable harm; temporary relief should be withheld when the legal right underlying the claim is unsettled; and a preliminary injunction should not issue where all material facts are controverted. Id. at 132-34.

A party seeking an injunction bears the burden of showing: "a reasonable probability of success on the merits; that a balancing of the equities and hardships favors injunctive relief; that the movant has no adequate remedy at law and that the irreparable injury to be suffered in the absence of the injunctive relief is substantial and imminent; and that the public interest will not be harmed." Brown v. City of Paterson, 424 N.J. Super. 176, 183 (App. Div. 2012) (citing Waste Mgmt. v. Union County Utils., 399 N.J. Super. 508, 519-20 (App. Div. 2008)).

As applicable in this matter, Rule 1:7-4(a) requires that "[t]he court, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon." "[A] judge is required to detail the findings of fact and conclusions of law in a written or oral opinion." Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 299-300 (App. Div. 2009).

"[N]either the parties nor [the appellate court] are well-served by an opinion devoid of analysis." Great Atl. & Pac. Tea Co., Inc. v. Checchio, 335

N.J. Super. 495, 498 (App. Div. 2000). In the "absence of any factual findings or legal conclusions, meaningful review is impossible," requiring an appellate court to "reverse the order . . . and to remand [the] matter to the trial court." Raspantini v. Arocho, 364 N.J. Super. 528, 533 (App. Div. 2003).

Here, the judge's decision falls short of the requirements of Rule 1:7-4. The records does not reflect facts the judge found in support of plaintiff satisfying each of the Crowe factors for entitlement to injunctive relief. "In the absence of reasons, [an appellate court is] left to conjecture as to what the judge may have had in mind." In re Farnkopf, 363 N.J. Super. 382, 390 (App. Div. 2003) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)).

Having reviewed the record, neither the judge's January 23, 2024 order nor his oral statement of reasons on January 17, 2024 provided the required findings of fact and conclusions of law necessary for our review of the judge's decision. Rather, the judge presumed, without supporting evidence or testimony, plaintiff suffered irreparable harm due to the failure to remove the utility pole and wires. Further, the judge did not address the Crowe factors in granting injunctive relief.

Moreover, on this record, we are satisfied there were genuine issues of material facts that could not be resolved based on the conflicting certifications

submitted by the parties. At one point during the OTSC hearing, the judge acknowledged the existence of a key factual dispute, specifically "whether or not [the] utility pole is on [plaintiff]'s property."

Defense counsel cited additional factual disputes material to the outcome of plaintiff's OTSC application. For example, defendant asserted Verizon owned the utility pole. However, plaintiff failed to name Verizon as a party in its lawsuit. As the purported owner of the utility pole, Verizon was entitled to notice of plaintiff's requested injunctive relief and an opportunity to be heard on the issue. Further, defendant cited the absence of evidence by plaintiff demonstrating the Borough actually assessed any fines or other sanctions as a result of plaintiff's failure to demolish the structure. Additionally, defendant noted the lack of expert testimony substantiating plaintiff's inability to demolish the structure without the removal of the existing utility pole and wires. Defendant also argued removal of the utility pole and wires would negatively impact electrical service to neighboring homes.

As a result of the judge's omission of the required fact findings and legal conclusions under Rule 1:7-4, as well as the foregoing genuine material fact disputes, we are constrained to vacate the January 23, 2023 order granting preliminary injunctive relief in favor of plaintiff. We remand to the trial court

for further proceedings consistent with this opinion.  On remand, the judge should address the exchange of discovery, if necessary, to resolve the factual disputes associated with plaintiff's OTSC application and satisfaction of <u>Crowe</u> factors.  We take no position on the merits of the parties' claims.

Vacated and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1900-23